By the Court;
Bosworth, J.
—Whether the conclusions of law to which the Court, at Special Term, came, that, upon the facts found, Davis made a valid dedication of the strips of land on either side of Eighth street to the use of the public, which operated as a permanent enlargement of the street, is a sound one; is a question by no means free from difficulty. Davis conveyed every part of them, with the lots of which they were fronts, absolutely, and with a covenant against all incumbrances thereon. They have been inclosed and used as court-yards by the owners of the lots of which they form parts, and the public *143 have been excluded, at all times, from entering upon them for any public purpose.
At the same time, by the appropriation made of them, and the use to which they have been devoted, the original street has not been encroached upon, by steps or areas to the dwelling-houses erected thereon, and the public have had the uninterrupted use of a carriage-way thirty feet wide, and of a sidewalk, on each side of the street, fifteen feet wide, and for all practical purposes, the enjoyment of a street seventy-six feet wide, as fully as if it had been made of that width by law.
We deem it unnecessary to express any definite opinion, whether the decision made of this question, at Special Term, was correct.
We think, that on the facts found, the judgment must be affirmed, even if it be conceded, or must be held, that no valid dedication has been made of this strip of eight feet in width as a part of the public street.
On the facts found, and admitted by the pleadings, it may, fairly, be said that those who first bought of Davis, bought upon the assurance, on which they relied, that the buildings to be afterward erected should be located to conform to the plan, and that the open space between the buildings on the opposite sides of the street should be kept open, permanently, to the width of seventy-six feet. Each subsequent purchaser, from Davis, of lots, or of a house and lot, on this street, bought on the like assurance and rebanee, expecting to have the benefit of that assurance being kept and realized, and that other purchasers, whether prior or subsequent to himself, should also have the benefit to result from his conforming to the plan himself, • and practising towards them the good faith which he expected them to observe towards him.
By this mode of proceeding all the lots on both sides have been built upon in conformity to this plan and common understanding, and in pursuance and in execution of it. Every prior purchaser, by reason of every subsequent purchaser having done what Davis assured each purchaser should be done, has had an actual execution, in respect to each lot, of the promise and assurance made by Davis to induce each and all of those who bought; to buy and build; or to buy a dwelling-house already built.
*144 In such a state of things, and after an actual execution of this plan and common understanding, for the improvement of this part of Eighth street, and after it has been exactly conformed to and observed in good faith for so many years; and in consideration that large investments have been made by the purchasers who bought houses completed at the time of their purchase, or who bought lots and erected expensive dwellings conforming to the plan, relying upon the assurance that the benefits, to result from conforming to it were to be perpetually enjoyed; it would be inequitable to permit any one of such original purchasers, or any person succeeding to his rights, with notice of this common understanding and the execution of it, to damage seriously the property of every other owner on St. Mark’s place, by building upon this eight feet up to the line of the street as originally laid out.
After such an actual execution of the original plan and common understanding, and long conformity to it, the equitable rights of all of the owners of this property should be regarded as being as clear and certain, as their legal rights would have been, if all had covenanted with each other before any building was erected (they then owning the land), that such a plan should be conformed to in building, and that the buildings to be erected on either side should be on a uniform line eight feet back from the line of the street, and that this space of eight feet on each side of it should be kept open perpetually.
To allow the defendants to erect a building on the northeasterly corner of Third avenue and St. Mark’s place, covering the whole of this strip of eight feet in width, to the distance of seventy-five feet from the easterly side of the Third avenue, would permit a fraud to be practised on Mr. Maxwell and other original purchasers, who bought on the same assurances, and in reliance upon them, as he did.
To permit the defendants to do this, would be permitting them to do what Wilkes could not have originally done, without acting in bad faith towards Davis and all others who had previously bought of him on the same representations and expectations, as influenced Mr. Maxwell to purchase.
But no original purchaser ever departed, or seems to have thought of departing from the plan exhibited during the nego *145 tiations for Ms purchase, and with reference to which it was made.
Each purchaser in building as he did build, seems to have thus built solely with a view to conform to and execute the common understanding of the original purchasers.
Many of them, as the testimony discloses, supposed when they bought, that there was something appearing of record which would preclude any person from building nearer than within eight feet of the line of the street, and which would require him to place the front of any dwelling he might erect, on the uniform lme indicated by the plan which Davis had adopted.
It may be said that each purchaser, beginning with the first, had the agreement of Davis, on which he relied, that the lots not then built on, should, when built upon, be covered with dwellings fronting on this line, and that St. Mark’s place should be kept open, and remain seventy-six feet in width. Every purchaser, buying after some of the lots had been built upon, not only had this agreement or assurance of Davis to induce Mm to purchase, but he had the further fact to influence him, that as to those which had been built upon, there had been an execution of the plan adopted for the whole, and which they were assured was to be thereafter observed, in building upon both sides of the street, from avenue to avenue.
I think therefore that it may be held, on the facts as found, that there was an agreement between each purchaser and Davis, that the plan which he had adopted and which he exhibited, as an inducement to buy, should be conformed to in building upon both sides of the street, from avenue to avenue, until all the lots had been built upon; and that the open space thus made to constitute the apparent street, should continue permanently seventy-six feet in breadth.
That this agreement was relied upon by each purchaser, and was with him an operative inducement to purchase,'
That in building upon the lots on both sides of the street, whether they were built upon by Davis or such purchasers, they were built upon to conform to tMs plan and agreement, and solely with a view to conform to and execute both.
That the plan having been thus conformed to by Davis, and *146 by every original purchaser, and solely with a view to conform to it, and tó execute such agreement, the rights of such original parties are in equity, as clear and absolute to have this plan and agreement conformed and adhered to in the future, as if.the first purchasers had owned their several lots before either was built upon, and had then agreed, in writing, that such a plan should be observed in building, and that the street should be so kept open permanently.
That after such an execution of the plan and verbal agreement, and after the long period which has elapsed, if any one original purchaser should rebuild, covering the whole of this space of eight feet within the limits of his own lot, he would commit a fraud upon every other original purchaser, and do him a substantial injury.
That the defendants bought, seeing the street built upon in conformity with this plan, and seeing in the manner in which it was built upon, something more than an accidental conformity of fronts on a uniform line. They took a deed the terms of which indicate that their vendor declared, he was unwilling to covenant that there existed no restriction upon the right to an uncontrolled use of this eight feet, and that he therefore conveyed the lot in question, subject to any restrictions that might exist requiring it to be perpetually kept open as a court-yard.
Their right to pull down and cover this eight feet with a new building is no greater than Wilkes’ would have been after he had built as he did build, and after every other lot had been built upon, as Davis originally assured every purchaser, and as the common understanding of all the purchasers was, that it was to be and should be built upon.
He would not have been permitted on such a state of facts to do an act which would have been a fraud upon and a damage to every other original purchaser.
We regard it as settled law that when the owners of adjoining lots agree, though verbally, that each will erect a building or store on his own lot and that the dividing wall shall be a party wall, and be used to support the beams and roof of each building, and they build according to such agreement, and with a view to execute it, neither can remove, or do anything to impair the stability or suificiencv of such wall, so long, at least, as the *147 buildings continue in a condition to subserve in every substantial respect, the uses for which they were erected.
The equity, in the case before us, is as strong as in that last mentioned, that the common understanding of the parties after having been executed at great cost to each of them, should not be allowed to be violated by either so as to be a fraud upon and a serious damage and continuing annoyance to every other.
The grounds on which we affirm the judgment, were not much discussed on the argument of the appeal, but we think they are substantially raised by the plaintiff’s seventh printed point.
The judgment should be affirmed.
Pierrepoint, J., dissented. Judgment affirmed.